## Smith v. Tinker.

In the Court below,

SYLVANUS TINKER, *Plaintiff*; MATTHEW SMITH 2d, *Defendant*.

The United States are not entitled to a priority of payment, where the debtor has not sufficient property to pay his debts, but has made no general assignment of his effects for the benefit of his creditors, either voluntarily, or by process of law.

THIS was a *scire-facias* against the defendant, as the attorney, factor, &c. of *Jonah Gates*, an absent and absconding debtor.

The defendant pleaded the general issue; on which the jury returned a special verdict. The principal facts found were these: The copy was left in service with the defendant on the 29th of September, 1801. On the 8th of the same month, *Gates* sold him a piece of land, which he had owned for many years, and took in payment, five promissory notes, for *a hundred pounds* each, payable annually in five successive years, which, at the time of service, were wholly unpaid, and in *Gates'* hands. At the time of the sale, *Gates* was indebted to the United States in five several bonds previously given for duties, three of which were payable in January, 1802, and the other two in September following. On these bonds, as they respectively became due, suits were instituted, by the United States, and the land sold by *Gates* to the defendant attached. Judgments were soon afterwards recovered, and executions taken out. The defendant then agreed with the United States in substance, that if the executions should be levied on the land attached, and it should be set off to the United States, he would pay the amount of the executions, on condition that the United States should make out to him a good and sufficient conveyance of the land. This agreement was fulfilled on both parts. It was further found, by the special verdict, that *Gates*, at the time he sold the land, had no other property, and was indebted to a much larger amount than his whole estate and effects. In October, 1802, he obtained from the

General Assembly an act of insolvency, exonerating his body, but subjecting his future acquisitions. He had, however, continued utterly unable to pay his debts existing at the time of selling his land. The question of law referred to the Court was, whether the payments made by the defendant to the United States, under the circumstances stated, should affect the plaintiff's claim against the defendant, and diminish the sum in his hands to the amount of such payments ? This question was decided in favour of the plaintiff, and judgment rendered accordingly.

*Ingersoll*, and *R. Griswold*, for the plaintiff in error.

The question is, whether, under the circumstances disclosed by the special verdict, the United States were entitled, among the creditors of *Gates*, to a priority of payment? If they were, it is immaterial in what manner that payment was obtained. It was the duty of every person having the effects of *Gates* in his hands to deliver them up, or pay them over, in satisfaction of the claims of the United States. A voluntary delivery, or payment, would place him in the same situation, as though the property had been taken from him, by process of law.

It was undoubtedly competent to Congress to give the priority in question ; and the case must turn upon the just construction of the several acts which they have passed. The first is an act providing for the collection of duties, passed in 1790. The latter clause of the 45th section is as follows : " And in all cases of insolvency, or where any es- " tate in the hands of executors or administrators shall be " insufficient to pay all the debts due from the deceased, the " debt due to the United States, on any such bond, shall be " first satisfied." (a) The next was passed in 1797, the 5th section of which is as follows : " That where any revenue " officer, or other person, hereafter becoming indebted to " the United States, by bond or otherwise, shall become in-

(a) *Stat. U. S. vol.* 1. *p.* 221.

1806.

SMITH
v.
TINKER.

" solvent, or where the estate of any deceased debtor, in
" the hands of executors or administrators, shall be insuffi-
" cient to pay all the debts due from the deceased, the debt
" due to the United States shall be first satisfied ; and the
" priority hereby established shall be deemed to extend, as
" well to cases in which a debtor, not having sufficient pro-
" perty to pay all his debts, shall make a voluntary assign-
" ment thereof, or in which the estate and effects of an ab-
" sconding, concealed, or absent debtor, shall be attached by
" process of law, as to cases in which an act of legal bank-
" ruptcy shall be committed." (b)  The last is an act to regu-
late the collection of duties, passed in 1799.   The 65th sec-
tion contains the following provisions : " And in all cases of
" insolvency, or where any estate in the hands of the ex-
" ecutors, administrators, or assignees, shall be insufficient to
" pay all the debts due from the deceased, the debt or debts
" due to the United States on any such bond or bonds, shall
" be first satisfied ; and any executor, administrator, or
" assignees, or other person, who shall pay any debt due
" by the person or estate from whom, or for which, they
" are acting, previous to the debt or debts due to the United
" States from such person or estate being first duly satisfied
" and paid, shall become answerable in their own person and
" estate, for the debt or debts so due to the United States,
" or so much thereof as may remain due and unpaid." (c)
The meaning of the term " insolvency" is afterwards thus
explained : " And the cases of insolvency mentioned in this
" section shall be deemed to extend, as well to cases in which
" a debtor, not having sufficient property to pay all his or
" her debts, shall have made a voluntary assignment thereof,
" for the benefit of his or her creditors, or in which the
" estate and effects of an absconding, concealed, or absent
" debtor, shall have been attached by process of law, as to
" cases in which an act of legal bankruptcy shall have been
" committed." (d)

(b) Stat. U. S. vol. 3. p. 423.
(c) Stat. U. S. vol. 4. p. 386.
(d) Ibid. p. 387.

The counsel for the plaintiff in error, after reading these statutes, related their history, expounded their literal meaning, and explained the object contemplated by the legislature in making them. They contended, that the ordinary sense of the term "*insolvency*," implying an insufficiency of property to pay one's debts, was the only sense, which the words would bear, and which would fully attain the object in view.

They further contended, that by the act of insolvency, granted by the General Assembly, in October, 1802, the estate and credits of *Gates* passed to his assignees; and that the United States were, of course, entitled to a priority.

Neither the service of the foreign attachment, nor the judgment against the absconding debtor, nor the demand upon the garnishee, and return of the officer, changed the nature of the debt, or the interest of the parties in it. The whole process against the garnishee is but a remedy to reach the assets of the absconding debtor; and until the property is actually taken, after a judgment on the *scire-facias*, it may be arrested by any proceeding, either under an act of bankruptcy, or insolvency. Such is the case in the settlement of insolvent estates under our laws. Though judgment passes against the administrator, and execution is returned *non est*, and a *scire-facias* is brought; yet if the estate is afterwards represented insolvent, the proceeding is arrested, and the creditor must put up with his *dividend*.

*Daggett*, for the defendant in error.

The facts found by this special verdict fully warrant the judgment given by the Superior Court, unless the transactions between *Smith* and the United States, place him in a more favourable situation than other creditors. *Tinker* has proceeded according to the requirements of the statute relating to absent and absconding debtors. *Smith* must res-

pond to him for the debt paid the United States, unless a priority can be made out in their favour on the case as stated.

The points made, therefore, by the assignment of errors, are resolvable into this, *viz.* Had the United States a lien upon *Jonah Gates'* land, so that the debt due to them must be first paid ?

This question must be answered by the true construction of the several acts of Congress on this subject. These acts are found in the first volume of the Laws of the United States, page 221,—2d vol. 79,—3d vol. 423,—and 4th vol. 386. They are not variant from each other ; and the operative part of them on this question is contained in the 65th section of the Act entitled " An act to regulate the collec- " tion of duties on imports and tonnage," in pages 386 and 387, of the 4th volume.

In the case before us, there has been no voluntary assign- ment for the benefit of creditors ;—there has been no " act of " legal bankruptcy ;"—but it is urged, that there was in- solvency, and an attachment of the estate and effects of an absent debtor, &c.

1. *Gates* was indeed insolvent ;—that is, he was unable to pay all his debts ;—but the statutes of the United States did not intend to give priority in *all* such cases. The word " insolvency" here means not only inability to pay, but some act by which that inability is rendered notorious, and une- quivocal. In the former part of the section of the act al- luded to, provision is made for priority in favour of the United States in cases of insolvency, where the estate is in the hands of administrators or executors. The word " as- " signees" is used, and persons are said to be " acting" for estates.—By these expressions the above construction is supported. Indeed, the intent of the legislature undoubtedly was, that in case of any voluntary or compulsory distribu-

tion of the estate of any debtor of the United States, which estate was insufficient to pay all the debts due, the government should be preferred. This principle is adopted in England, and in many, if not all, the states in the Union, and is sanctioned by universal consent.

2. But there has been, it is urged, an attachment, by process of law, of the estate and effects of an " absent, con- " concealed, or absconding debtor." The case, therefore, is within the words of the statute.

It is believed, that those words were used with reference to general provisions of law regarding absent and absconding debtors,—such as the statute of the State of New-York, by which, by process of foreign attachment, *all* the estate of the absent debtor is secured for the benefit of *all* his creditors. (e) Understanding the language of the statute of the United States in this manner, the provision seems wise and just, and in accordance with the other parts of the act. But, the statute of this State, which regulates the proceedings in this case, rests on different principles. By our laws, any individual may attach the property of his debtor for his exclusive benefit ; but as estate, effects, and debts may be concealed, by absent and absconding debtors, in the hands of their friends, the provision would be incomplete without the law on which this suit is brought. Thus the defect of the other law is supplied. Still, however, the attachment is solely for the benefit of the individual creditor.

The construction contended for, by the plaintiff in error, will give the priority to the United States, whenever it can be made out on trial, that there was an inability to pay. To say nothing of the embarrassments thrown on transfers of property, by creating liens upon such uncertain grounds, or of the conflict produced between the United States and individual creditors, if that construction be sound, I contend, that it is not within the words of the act. " The estate and

(e) See *Laws of N. York, vol. 1, page* 236.

H h

1806.

SMITH
*v.*
TINKER.

" effects" must be attached ;—but is the attachment of property of the value of ten dollars, or of a debt to that amount, an " attachment of the estate and effects ?" Ought a general distribution of a debtor's estate to take place on the happening of such an event ?

BY THE COURT, GRISWOLD, *Asst.* dissenting,

The judgment was affirmed.

## Salmon *v.* Pixlee.

In the Court below,

DAVID PIXLEE, *Plaintiff;* DANIEL SALMON, *Defendant.*

Accord and
satisfaction
may be plea-
ded in bar of
a writ of er-
ror.

THIS was an action on the case, for false and fraudulent representations, in the sale of Virginia land, with regard to its quality and situation, and the validity of the deed, under the laws of Virginia, by which the defendant made a pretended conveyance of the land to the plaintiff.

On the general issue, a verdict was found for the plaintiff, and judgment rendered accordingly.

The error assigned, before this Court, was the insufficiency of the declaration.

*Pixlee* pleaded in bar of the writ of error, that before the impetration thereof, it was accorded and agreed, by parol, by and between *Salmon* and himself, that he should deliver to *Salmon* the deed mentioned in the declaration, in full satisfaction of all claims, which *Salmon* then had, or might have, against him, either in law or equity, on account of the judgment of the Superior Court in this case, and of any supposed errors therein ; which deed he accordingly redelivered, and *Salmon* accepted.